[No. 52032-6-I.   Division One.   March 22, 2004.]

WESCOT CORPORATION, ET AL., *Appellants*, v. THE CITY OF DES MOINES, *Respondent*.

*John E. Keegan, Craig W. Miller,* and *Alice Le Truong* (of *Davis Wright Tremaine, L.L.P.*), for appellants.

*Linda A. Marousek, City Attorney,* for respondent.

BECKER, C.J. — The Land Use Petition Act, chapter 36.70C RCW, provides that a decision by a local government granting or denying a request for permission to use a public park is not subject to judicial review. We reject appellant Wescot's argument that the statute refers only to minor park usages. When Wescot applied for permits to build a major commercial project on city park property without first obtaining the City's consent for such a use, the City's refusal to process the applications was not reviewable and the trial court properly refused to consider the appeal.

Wescot Corporation would like to construct a 4.8 mile temporary conveyor system to deliver fill material to Sea-Tac airport during construction of the third runway. The intended purpose of the conveyor system is to provide an alternative to truck transport.

Due to engineering necessity, the conveyor system would have to run through Des Moines Creek Beach and Des

Moines Creek Park for a little less than a mile. These properties belong to the City of Des Moines and are within the city limits.

In order to go forward with the project, Wescot would need to obtain a shoreline substantial development permit and an unclassified use permit from the City. The Des Moines Municipal Code (DMMC) states that applications for these permits must be accompanied by the permission of the owner of the affected property, and are incomplete without it. "The property owner shall sign all applications or provide written authorization of the requested land use action." DMMC 18.56.110. "The department shall not accept an application until it is complete and meets all the requirements of the department." DMMC 18.94.120. Wescot has not yet obtained the City's signature or authorization to include the affected city property in the conveyor project.

Notwithstanding the lack of permission by the City as property owner, Wescot submitted applications for the permits to the Des Moines Community Development Department, the body responsible for approving such applications. Wescot acknowledges that the City has full discretion to decide what it wants to do with its property, and that the project cannot be built unless the City agrees to an easement. But for reasons the record does not explain, Wescot wants to obtain the shoreline permit and the unclassified use permit before negotiating with the City for an easement.

The Community Development Department informed Wescot in writing that the applications, because they lacked the consent of the City, were incomplete and therefore would not be considered. Wescot appealed this decision to the Des Moines hearing examiner. The hearing examiner upheld the Department's decision to reject the permit applications. Wescot then filed a petition for judicial review of the hearing examiner's decision under the Land Use Petition Act (LUPA), RCW 36.70C.005-.900.

LUPA provides for judicial review of land use decisions made by local jurisdictions. The statutory definition of "land use decision" excludes decisions on applications for permits or approvals to use, vacate, or transfer streets, parks and similar types of public property:

> (1) "Land use decision" means a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
>
> (a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used, *but excluding applications for permits or approvals to use, vacate, or transfer streets, parks, and similar types of public property*; excluding applications for legislative approvals such as area-wide rezones and annexations; and excluding applications for business licenses.

RCW 36.70C.020(1)(a) (emphasis added).

The trial court ruled that the decision by the Community Development Department to reject Wescot's application fell within the statutory exclusion because it was a decision on an application for a permit to use a park. The court dismissed Wescot's petition. Wescot filed this timely appeal, contending—as it did below—that insofar as the statute applies to parks, the only decisions it excludes are those on applications for minor park usages such as picnics or weddings.

As Wescot points out, the Des Moines Municipal Code provides in Title 19 (Parks and Recreation) for the issuance of permits to use city parks for rallies, meetings, or other short term group events. The standards and procedures for approval of commercial development projects are found in Title 18 (Zoning). It is undisputed that Wescot's applications for a shoreline development permit and an unclassified use permit are *not* for park use permits under Title 19 of the Des Moines Municipal Code. They are project permit applications, and they would be considered under Title 18 if the City, as landowner, had authorized the requested land

use. In that case, the City's denial or rejection of the project would be subject to judicial review under LUPA, just like any other project permit application, because there would be no underlying issue of permission to use the public property in question.

But Wescot insists on including the City's park in its project and having its application processed without the consent of the City as the owner of the property.

■ Until the City grants the consent that would allow Wescot's application to be deemed complete, the City must be seen as having decided not to let its park be used as the site of a conveyor system for airport fill. A judge could not reverse the hearing examiner's decision, and force the Community Development Department to process Wescot's application, without overturning the City's decision to withhold its permission. Thus, Wescot's effort to bring this dispute before a judge seeks exactly what LUPA forbids: judicial review of a decision on an application to use a park.

■ Wescot contends that the legislature intended to limit the park use exclusion to minor usages, but this argument finds no support in the actual language of the statute. Questions of law regarding the construction of a statute are reviewed de novo for errors of law. *McTavish v. City of Bellevue*, 89 Wn. App. 561, 564, 949 P.2d 837 (1998). When a statute or ordinance is unambiguous, construction is not necessary, as the plain meaning controls. *McTavish*, 89 Wn. App. at 565. The plain meaning of this statute is clear. It precludes judicial review of "applications for permits or approvals to use . . . parks." RCW 36.70C.020(1)(a). The statute is constructed so that an application to "use" a "park" is in the same category as an application to vacate a street, or an application to "use, vacate or transfer" other types of public property that are similar to streets and parks. Read as a whole, the exclusion evinces a legislative intent to treat the decisions a city makes as an owner of public property more deferentially than decisions a city makes as a regulator of private property.

Because of the park use exclusion in LUPA, the trial court lacked authority to review the hearing examiner's decision.

The City requests reasonable attorneys' fees and costs on appeal under RCW 4.84.370. Because the City has prevailed at all levels, the request is granted, subject to compliance with RAP 18.1.

Affirmed.

COLEMAN and COX, JJ., concur.